# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| NANOCO TECHNOLOGIES LTD., | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) Civil Action No. 2:20-cv-00038-JRG <br> ) |
| SAMSUNG ELECTRONICS CO., LTD., and SAMSUNG ELECTRONICS AMERICA, INC. | ) **JURY TRIAL DEMANDED** <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) <br> ) |

**PLAINTIFF NANOCO TECHNOLOGIES LTD.'S RESPONSE
IN OPPOSITION TO SAMSUNG'S RENEWED MOTION TO STAY PENDING
*INTER PARTES* REVIEW OF THE ASSERTED PATENTS**

## **TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ...........................................................................................................1
II. LEGAL STANDARD......................................................................................................2
III. ARGUMENT...................................................................................................................3
    A. A Stay Would Unduly Prejudice Nanoco and Present a Clear Tactical Advantage for Samsung ........................................................................................3
    B. A Stay Will Not Likely Result in Simplifying the Case Before the Court ..............5
        1. A Stay Will Not Simplify Issues Related to Validity of the Asserted Patents.........................................................................................................5
        2. A Stay Is Not Likely to Simplify Issues Related to Infringement of the Asserted Patents .........................................................................................7
    C. The Proceedings Before the Court Have Reached an Advanced Stage.................13
IV. CONCLUSION..............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arbor Global Strategies LLC v. Samsung Elecs. Co.*,
  No. 2:19-cv-00333-JRG-RSP, 2021 WL 66531 (E.D. Tex. Jan. 7, 2021) ............................2, 8

*Clinton v. Jones*,
  520 U.S. 681 (1997)..................................................................................................................2

*Google Inc. v. Lee*,
  No. IPR2016-00045, Paper No. 28, 2017 Pat. App. LEXIS 5397 (PTAB Apr.
  21, 2017) ................................................................................................................................13

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936)..................................................................................................................2

*NFC Techs. LLC v. HTC Am., Inc.*,
  Case No. 2:13-cv-1058-WCB, 2015 WL 1069111 (E.D. Tex. Mar. 11, 2015)
  (Bryson, J.)...............................................................................................................................3

*Peloton Interactive, Inc. v. Flywheel Sports, Inc.*,
  No. 218-cv-390-RWS-RSP, 2019 U.S. Dist. LEXIS 137774 (E.D. Tex. Aug.
  14, 2019) ........................................................................................................................3, 7, 8

*SAS Ins., Inc. v. Iancu*,
  138 S. Ct. 1348 (2018).................................................................................................1, 2, 7, 8

*Solas OLED Ltd. v. Samsung Display Co.*,
  2020 U.S. Dist. LEXIS 125973 (E.D. Tex. July 17, 2020)...................................................3, 4

I.      INTRODUCTION

Samsung's motion should be denied because a stay pending *inter partes* review would unduly prejudice Nanoco. By the time Samsung's motion is decided, discovery will have closed and Nanoco will already have incurred the majority of expenses associated with this litigation. Nanoco's case is ready to go to trial, and the amount of work already done far exceeds the amount left to do. Worse, if this litigation is stayed, when it resumes Nanoco will have to perform a substantial amount of additional work and incur substantial additional expenses just to get the case back to where it is today. Any stay would last for at least a year, during which time Samsung will make new infringing products and sales. When the case resumes, Nanoco will have to duplicate its discovery efforts regarding these new products and sales, which will involve discovery not only from Samsung, but also from the third-parties involved in Samsung's manufacturing processes. Samsung, on the other hand, will need little additional information from Nanoco.

Further, a stay is not likely to simplify the case before the Court. There is no overlap whatsoever between this litigation and the IPR proceedings because Samsung stipulated that it would not proceed with its §§ 102 and 103 invalidity case in this litigation. It did so to encourage the PTAB institute IPRs despite the advanced stage of this litigation. However, by removing any overlap between the IPRs and this litigation, Samsung weakened its case for a stay here. Just as the PTAB is moving forward because there is no overlap with this litigation, so too should this litigation move forward since there is no overlap with the PTAB. Samsung wrongly contends there will be simplification because "IPR has been instituted with respect to every single asserted claim, indicating the strength of Samsung's invalidity arguments…" Mot. at 5. Samsung is stuck in the past. Ever since 2018, when the Supreme Court decided *SAS Ins., Inc. v. Iancu* and ***required*** the PTAB to institute all challenged claims, institution decisions on all claims do not

1

"indicate the strength" of invalidity arguments. 138 S. Ct. 1348, 200 L. Ed. 2d 695 (2018) (hereinafter "*SAS*"). "Post-*SAS*, however, Samsung must point to more than a successful petition to show that the Board is likely to invalidate every asserted claim." *Arbor Global Strategies LLC v. Samsung Elecs. Co.*, No. 2:19-cv-00333-JRG-RSP, 2021 WL 66531, at *7 (E.D. Tex. Jan. 7, 2021). Samsung does not "point to more," failing even to address the merits of its IPRs' invalidity position at all. And Samsung's invalidity positions are weak, with the PTAB expressly rejecting many of Samsung's arguments and noting that Nanoco's positions have appeal. *See e.g.*, Samsung Ex. F at 21 ("[Nanoco's] argument has some appeal"). The PTAB supports Nanoco, but wants expert testimony to confirm its positions. *See* Samsung Ex. F at "[Nanoco's] arguments are not without merit, but depend, at this stage, on assertions of counsel about what an ordinarily skilled artisan would have taken away from the combined teachings of the prior art references" Samsung Ex. F at 23-24.  It will be easy for Nanoco to provide the PTAB with the needed expert testimony.

Finally this case should not be stayed because it is in an advanced stage.  Samsung does not contend otherwise, but merely suggests that there is still work to be done.  However, the work remaining to get this case to trial is small compared to the amount of work already done.  Considering the prejudice to Nanoco, the unlikelihood of simplifying issues, and the advanced stage of this litigation, Samsung's motion should be denied and this case should proceed to trial.

## II.   LEGAL STANDARD

A district court has the inherent power to control its own docket, including the power to stay proceedings. *Clinton v. Jones*, 520 U.S. 681, 706, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997). How to best manage the court's docket "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55, 57 S. Ct. 163, 81 L. Ed. 153 (1936). "The party seeking a stay bears the burden of

showing that such a course is appropriate." *Peloton Interactive, Inc. v. Flywheel Sports, Inc.*, No. 218-cv-390-RWS-RSP, 2019 U.S. Dist. LEXIS 137774, 2019 WL 3826051, at *1 (E.D. Tex. Aug. 14, 2019). "District courts typically consider three factors when determining whether to grant a stay pending *inter partes* review of a patent in suit: (1) whether the stay will unduly prejudice the nonmoving party, (2) whether the proceedings before the court have reached an advanced stage, including whether discovery is complete and a trial date has been set, and (3) whether the stay will likely result in simplifying the case before the court." *NFC Techs. LLC v. HTC Am., Inc.*, Case No. 2:13-cv-1058-WCB, 2015 WL 1069111, at *2 (E.D. Tex. Mar. 11, 2015) (Bryson, J.). Each of these factors weighs against staying this litigation.

### III. ARGUMENT

#### A. A Stay Would Unduly Prejudice Nanoco and Present a Clear Tactical Advantage for Samsung

Nanoco will be unduly prejudiced if a stay is entered this late in the litigation after so much work has been done. Nanoco has already incurred the majority of expenses associated with this litigation and its case is ready to go to trial. The Court has already issued its claim construction Order, and by the time Samsung's motion is decided, both fact and expert discovery will have closed. While there will still be some work to do related to pre-trial submissions, the effort required for the remaining work is dwarfed compared to what has already been done.[1] At

---

[1] By the time Samsung's motion is decided, Nanoco will have: (1) filed its complaint; (2) reviewed Samsung's Answer and responded to Samsung's counterclaims; (3) served infringement contentions and reviewed invalidity contentions; (4) negotiated the Protective Order; (5) negotiated the Docket Control Order; (6) negotiated the Discovery Order; (7) negotiated the Amended Discovery Order; (8) attended the case management conference; (9) collected and reviewed client documents and produced almost a quarter-million pages to Samsung; (10) produced its privilege log; (11) reviewed over two hundred thousand pages of documents produced by Samsung and had relevant documents professionally translated; (12) reviewed hundreds of documents produced by five separate third-parties; (13) propounded four sets of interrogatories to Samsung; (14) responded to three sets of interrogatories from Samsung, including serving multiple updates to these interrogatories; (15) responded to forty request for admission; (16) served subpoenas on various third parties and negotiated subpoena scope; (17) completed all claim construction proceedings, including drafting initial, reply, and responsive claim constructing briefs and attending the *Markman* hearing; (18) received and reviewed the Court's claim construction Order; (19) propounded and responded to deficiency letters and attended numerous meet-and-confer conferences regarding them; (20) responded to motions to

this point, a sudden stay would be unduly prejudicial. *See Solas OLED Ltd. v. Samsung Display Co.*, 2020 U.S. Dist. LEXIS 125973, *4, 2020 WL 4040716 (E.D. Tex. July 17, 2020) (denying stay where "Final Written Decisions on the aforementioned IPRs could not be issued before the scheduled infringement trial in this case and given the late stage of litigation, a majority of the costs associated with litigation have already been incurred."). Like the *Solas* case, Nanoco has already incurred the majority of expenses associated with the litigation, and the final written decisions on the IPRs will not issue for more than a half-year after trial in this litigation. Also like the *Solas* case, here "discovery is completed and trial is only a few months away. Accordingly, this factor weighs heavily against a stay at this advanced stage of litigation." *Id*. at *6.

Further, if this litigation is stayed, when it resumes Nanoco will have to perform a substantial amount of additional work and incur a substantial amount of additional expenses just to get the case back to where it is today. Today the case is ready for trial. But a stay pending IPR would last for a least a year, during which time Samsung will doubtlessly continue to make and sell new infringing devices. When the case resumes next year, discovery will need to be reopened for Nanoco to seek information about these new devices and the confidential methods used to manufacture them, along with associated confidential financial information. This will involve not only discovery from Samsung, but also from the third-parties involved in Samsung's manufacturing processes. Depositions related to this new discovery will need to be taken. Expert

---

compel; (21) served 30(b)(6) deposition notices; (22) responded to Samsung's 30(b)(6) deposition notices; (23) prepared for and deposed eight Samsung witnesses, many of them requiring professional translators; (24) prepped and defended seven Nanoco witnesses; (25) prepared for and deposed two third-party witnesses; (26) conducted professional consumer surveys; (27) identified expert witnesses and served five separate expert reports; (28) reviewed all of Samsung's expert reports; (29) prepared for and deposed all of Samsung expert witnesses; and (30) prepped and defended all of Nanoco's expert witnesses. This list is non-exhaustive. It does not include scores of meetings and daily tasks that have been required to keep this case moving forward and without delay over the past year.

4

reports will need to be supplemented, and expert depositions will need to be taken again. In short, a stay would cause a complete reset. Nanoco will have to duplicate its efforts and incur duplicated expenses. Samsung, in contrast, will not need any additional information from Nanoco. Samsung, a larger company than Nanoco by far, will enjoy the stay knowing that Nanoco will eventually need to expend substantial additional resources in the future just to get its case ready for trial again. For these reasons, a stay at this late juncture would significantly and unduly burden Nanoco, while presenting a clear tactical advantage to Samsung.

### B. A Stay Will Not Likely Result in Simplifying the Case Before the Court

A stay will not likely result in simplifying the case before the Court. Samsung raises two arguments to suggest otherwise. First, Samsung contends that a stay will simplify issues related to validity. *See* Mot. at 6 ("this case will be simplified because Samsung will be estopped from re-arguing invalidity to the jury…"). Second, Samsung contends that the case will be simplified with respect to infringement. *Id*. (suggesting the IPRs will likely "result in the cancellation of all asserted claims."). Neither of these two arguments hold water.

#### 1. A Stay Will Not Simplify Issues Related to Validity of the Asserted Patents

A stay will not simplify issues because Samsung stipulated that it would eliminate any and all overlap between this litigation and the *inter partes* reviews. *See* Samsung Ex. I (Mar. 2, 2021 Letter from M. Pearson to M. Newman). This was done in order to avoid PTAB exercising its discretion to "deny institution based on an advanced stage of a parallel proceeding." Samsung Ex. F at 13. Specifically, Samsung promised the PTAB that "it will not pursue in the District Court case the specific grounds asserted in the Petition, nor any other ground that was raised or that could have been reasonably raised in any *inter partes* proceeding." Samsung Ex. F at 13 (quotations removed). Samsung made "clear that this stipulation extends to any ground that

5

could be raised under §§ 102 or 103 on the basis of prior art patents or publications." *Id*. (quotations removed). Because the IPRs instituted, Samsung is now bound by its stipulation, and any possible anticipation or obviousness invalidity positions that Samsung might have taken in this litigation are no longer available to it. Samsung appears to be as good as its word, as Samsung's expert witness on invalidity stated "I do not expect to testify that the Asserted Patents are anticipated or rendered obvious by prior art references at trial in this litigation." Exh. 1 (excerpt from Opening Expert Report of Vicki Colvin, Ph.D) at 118. Samsung's expert had previously included anticipation and obviousness opinions "as a contingency" in Appendix I to her expert report, but Samsung has agreed to withdraw Appendix I. Exh. 2 (5-25-2021 email from M. Pearson to M. Newman) ("As for Appendix I to the Colvin report, we agree to withdraw it in reliance on the decision of the PTAB to institute IPR on all of the asserted patents."). Samsung's argument that "this case will be simplified because Samsung will be estopped from re-arguing invalidity to the jury based on grounds raised, or that could reasonably have been raised, at the PTAB" makes no sense. Mot. at 6. Samsung is *already* estopped.

    None of the cases Samsung cites present this unique set of facts, as all of those cases consider situations in which the IPR proceedings overlap with the respective litigations on validity issues. *See* Mot. at 7. Whether a stay will likely simplify a case in which defendants have removed any overlap between the IPRs and the litigation appears to be an issue of first impression. This new fact pattern is born from a recent strategy used by defendants to avoid discretionary denials at the PTAB where there is a co-pending litigation in an advanced stage. The strategy is to remove all overlap between the PTAB and the advanced-stage litigation to encourage the PTAB to institute the IPRs. Here the strategy worked for Samsung.  The PTAB evaluated six factors to determine whether to exercise its discretion to deny institution, and only

one was determined to favor institution. This single factor, which controlled the decision to institute, was whether there was overlap between issues raised in the petition and in the parallel proceeding. *See e.g.*, Samsung Ex. F at 12 ("Petitioner [Samsung] argues that [its stipulation] obviates any concerns of duplicative efforts between the District Court and the Board.").

By removing any overlap between the IPRs and this litigation, however, Samsung has largely destroyed its case for a stay here. Just as the PTAB decided to move forward with its proceeding because there is no overlap with this litigation, this Court should move forward with its proceedings because there is no overlap with the PTAB. In short, the outcome of the IPRs will not simplify issues before the Court because nothing that this Court needs to decide is being decided by the PTAB, and nothing that the PTAB needs to decide is being decided by this Court.

### 2.  A Stay Is Not Likely to Simplify Issues Related to Infringement of the Asserted Patents

Since the IPR proceedings will not simplify Samsung's invalidity case before this Court, Samsung's only remaining argument for simplification is that "[t]here is a strong likelihood that the instituted IPRs will result in the cancellation of all asserted claims." Mot. at 5-6. To support this argument, Samsung relies only upon statistics without analysis, and an incorrect assertion that "IPR has been instituted with respect to every single asserted claim, ***indicating the strength*** of Samsung's invalidity arguments…" Mot. at 5 (emphasis added).  While years ago an institution on all claims may have "indicated the strength" of invalidity arguments, not so anymore. This is because "*SAS Ins., Inc. v. Iancu*, 138 S. Ct. 1348, 200 L. Ed. 2d 695 (2018) (hereinafter "*SAS*") precluded the PTAB from instituting IPRs for only a portion of the patent claims, so any institution decision occurring after *SAS* provides a weaker inference that the PTAB will determine that all challenged claims are unpatentable." *Peloton*, 2019 WL 3826051, at \*3-4. Thus, it is no longer a sign of particularly strong invalidity arguments when the PTAB

7

institutes a trial as to all claims because it has been required to do so since the Supreme Court decided *SAS*. *See Peloton* at *4 ("institution decisions for the [asserted patents] are less helpful in indicating that IPRs will result in a simplification of issues than they would have been before *SAS*.").

Other than relying upon aggregate statistics divorced from any specific analysis to suggest parallels with the instant case, Samsung amplifies the fact that the IPRs instituted to support its argument. But since *SAS*, this Court has rejected that argument as a basis for a stay. *Arbor Global Strategies* at *7 ("Post-SAS, however, Samsung must point to more than a successful petition to show that the Board is likely to invalidate every asserted claim."). The cases cited by Samsung to support its position are inapposite because they were decided before the *SAS* decision. Mot. at 5-7 (citing cases from 2014-2017, which all predate the 2018 *SAS* decision). The only exception is Samsung's cite to the 2021 decision in *Arbor Global*. Mot. at 6. *Arbor Global* proves Nanoco's point by requiring more than a successful institution to show likelihood of simplification post-*SAS*. *Arbor Global* at *7. In *Arbor Global*, there was a likelihood of simplification because the PTAB had noted that the IPR "sets forth a ***strong showing*** of unpatentability on the challenged claims." *Arbor Global* at *7 (emphasis added). Samsung does not discuss the actual merits of its IPR invalidity position at all, and for good reason. Samsung's invalidity arguments before PTAB are particularly weak, and as discussed below, Samsung is unlikely to succeed on any challenged claim, let alone all of them. Samsung thus does not provide anything more than the fact the IPRs instituted, which is insufficient. *Id*. ("Samsung must point to more…").

### *The PTAB rejected most of Samsung's grounds*

Samsung's arguments before the PTAB are not strong, and the Court need not take Nanoco's word for that. Throughout the institution decisions the PTAB repeatedly acknowledged

8

the strength of Nanoco's substantive arguments. *See e.g.,* Samsung Ex. F (IPR2021-00186 Decision Granting Institution ('365 patent)) at 14 ("the present record shows that there may be merit to [Nanoco's] substantive arguments."); *see also* Samsung Ex. G (IPR2021-00182 Decision Granting Institution ('068 patent)) at 14 ("the present record shows that there may be merit to [Nanoco's] substantive arguments"); Samsung Ex. C (IPR2021-00183 Decision Granting Institution ('828 patent)) at 14 ("the present record shows that there may be merit to [Nanoco's] substantive arguments"); Samsung Ex. D (IPR2021-00184 Decision Granting Institution ('423 patent)) at 14 ("the present record shows that there may be merit to [Nanoco's] substantive arguments"); Samsung Ex. E (IPR2021-00185 Decision Granting Institution ('557 patent)) at 14 ("the present record shows that there may be merit to [Nanoco's] substantive arguments").  It appears to be rare for the PTAB to concede that there may be merit to patent owners' arguments in its institution decisions. A search on Lex Machina® for the phrase "may be merit" across all PTAB institution decisions revealed only seven cases in which the PTAB has noted the merit of patent owner's substantive arguments—five of those cases are the institution decisions at issue here discussing the merits of Nanoco's arguments, and the other two cases ultimately settled prior to final determination. *See* Exh. 3 (Lex Machina® Report).

In addition to mentioning the merit of Nanoco's position, the PTAB also expressly rejected many of Samsung's invalidity grounds. Rather than "indicating the strength of Samsung's invalidity arguments," the PTAB's institution decisions highlighted many shortcomings that Samsung is unlikely to overcome. Specifically, with respect to the '365 patent, the PTAB rejected Samsung's asserted obviousness over the Zaban, Farneth, and Yu references, finding "Petitioner does not demonstrate a reasonable likelihood of prevailing at trial with respect to any claim based on this ground." Samsung Ex. F at 26. With respect to this ground, the

9

PTAB stated "[i]n a nutshell, we agree with Patent Owner that Petitioner appears to advance far-fetched rationales for combining Zaban and Farneth that are hard to understand unless one was working backwards from the '365 patent disclosure." *Id*. (quotations removed). The PTAB also rejected Samsung's asserted obviousness over Lucey and Ahrenkiel, finding "Petitioner does not demonstrate a reasonable likelihood of prevailing at trial with respect to any claim based on this ground." *Id* at 27. The PTAB further rejected Samsung's asserted obviousness over the Lucey, Ahrenkiel, and Treadway references, finding "Petitioner does not demonstrate a reasonable likelihood of prevailing at trial with respect to any claim based on this ground." *Id*. at 28.

The PTAB expressed the same skepticism with respect to the other patents. With respect to the '423 patent, the PTAB found Samsung's petition insufficient to support its asserted obviousness over the Zaban and Ptatschek references. *See* Samsung Ex. D at 36 ("we do not find that Petitioner or [Petitioner's expert] Dr. Green have squarely addressed such differences between Zaban and Ptatschek when discussing their combination."). The PTAB also found that Samsung "has not shown a reasonable likelihood of prevailing with respect to any challenged claim based on [the obviousness over Lucey and Ahrenkiel] ground." *Id*. at 35. With respect to the '557 patent, the PTAB found that "Petitioner does not demonstrate a reasonable likelihood of prevailing at trial with respect to any challenged claim based on either ground that asserts Zaban and Ptatschek." Samsung Ex. E at 27. The PTAB further found that "Petitioner does not show a reasonable likelihood of prevailing with respect to any challenged claim based on [the obviousness over Lucey, Ahrenkiel, and Braun] ground." *Id*. at 29. With respect the '828 patent, the PTAB found Samsung's petition insufficient to support its asserted obviousness over the Zaban and Farneth references. Samsung Ex. C at 36 ("we do not find that Petitioner or Dr. Green have squarely addressed such differences between Zaban and Farneth when discussing their

10

combination.") And with respect to the '068 patent the PTAB rejected obviousness over Dubrow and Nelson, finding "Petitioner has not shown sufficiently that a person of ordinary skill in the art would have had a reason to combine the teachings of Nelson with those of Dubrow." Samsung Ex. G at 25.

Ultimately, for the quantum dot patents (the '365, '423, '557, and '828 patents), PTAB rejected every ground that did not rely upon Banin as a primary reference. And with respect to the Banin grounds, the PTAB admitted that Nanoco's "argument has some appeal" and that "[Nanoco's] arguments are not without merit, but depend, at this stage, on assertions of counsel about what an ordinarily skilled artisan would have taken away from the combined teachings of the prior art references" and "[a]ll of [Nanoco's] arguments have some appeal, and ultimately, any one of them has potential to control the ultimate outcome on this ground.") Samsung Ex. F at 20, 23-24. The PTAB made similar statements about the merits of Nanoco's arguments over Banin in all of its decisions related to the quantum dot patents. *See e.g.*, Samsung Ex. C at 26 ("Patent Owner's position to the contrary may have some merit…"); Samsung Ex. D at 25 ("Patent Owner's position to the contrary may have some merit…"); Samsung Ex. E at 21 ("[Nanoco's] argument has some appeal"). The PTAB's primary criticism of Nanoco's arguments over Banin is that the arguments are not accompanied by expert testimony—a deficiency that will be easy for Nanoco to cure in its Patent Owner Response.

### *The Banin grounds are weak.*

All of the asserted claims from the quantum dot patents require a "molecular cluster compound" and consider it to be an important part of the invention. This Court has construed the term "molecular cluster compound" to mean "clusters of three or more metal atoms and their associated ligands of sufficiently *well-defined chemical structure* such that all molecules of the cluster compound possess *the same relative molecular formula*." Dkt. 84 at 18 (emphasis added).

11

The Banin reference does not disclose a molecular cluster compound at all. Instead, Banin discloses gold particles of all different shapes and sizes—precisely the type of amorphous, impure nanoparticles that the patents distinguish from "molecular cluster compounds." *See* e.g., Exh. 4 ('828 patent) at 6:38-42 (noting that molecular clusters may be collections of identical molecules rather than ensembles of small nanoparticles). The PTAB credited Nanoco's argument here, but wished to see expert testimony on the matter. As the PTAB explained:

> We take account of Patent Owner's counterview that Banin's gold clusters are not well-defined, and certainly not identical. On that point, Patent Owner argues, and we agree, Banin prepares the gold clusters by the "Hutchinson process."
>
> Patent Owner contends that Hutchinson's process results in gold particle agglomerations of many different sizes. Directing us to Hutchinson's Figure 1(a) (reproduced below), Patent Owner posits that gold particle agglomerations of different sizes are clearly discernible.



FIGURE 1(a)

> Figure 1(a) is a representative transmission electron microscopy that shows narrowly disperse nanoparticles 1.5 nm ± 0.4 nm in diameter." Hutchinson's description of a "narrowly disperse" population of nanoparticles, however, may well have suggested to an ordinarily skilled artisan a monodisperse population. Neither party advances information,

12

> at this stage, tending to show how an ordinarily skilled artisan would have interpreted the "narrowly disperse nanoparticles" illustrated in Hutchinson's Figure 1(a). We leave that issue for trial, to the extent Patent Owner raises it in a timely filed response to the Petition.
>
> In addition, Patent Owner asserts that Hutchinson "average[s] out" the gold clusters of "different sizes" to estimate that "the average number of gold atoms is approximately 101." That argument has some appeal. On this record, however, we agree only that Hutchinson discloses an "[a]verage empirical formula" based on an "assumed 101 gold atom core." We leave for trial the question of how an ordinarily skilled artisan would have interpreted that disclosure, should Patent Owner raise this issue in a timely filed response to the Petition.

Samsung Ex. F at 19-21 (citations removed).

Because the PTAB rejected all grounds related to the quantum dot patents except for those based on Banin, and because PTAB has expressed skepticism with respect to whether Banin even discloses a molecular cluster compound, the likelihood that Samsung's IPRs will cancel any claim at all is greatly diminished, especially where Samsung's burden moving forward will be higher than it was at the institution phase. *See Google Inc. v. Lee*, No. IPR2016-00045, Paper No. 28, at 9-11, 2017 Pat. App. LEXIS 5397 at *17 (PTAB Apr. 21, 2017) ("Petitioner's burden of proof is higher now than it was at the institution stage"). Because it is unlikely that the PTAB will cancel the challenged claims, and because Samsung is already precluded from advancing any validity arguments based upon anticipation or obviousness before this Court, a stay is unlikely to simplify the issues before the Court.

### C.  The Proceedings Before the Court Have Reached an Advanced Stage

Samsung correctly notes that when deciding whether to stay a case pending IPR, district courts consider whether the proceedings before the court "have reached an advanced stage." Mot. at 4. But, Samsung never argues that the proceedings here are ***not*** in their advanced stages. Instead, Samsung only contends that there is still some work to do before trial. Mot. at 7-9. Since

13

Samsung has tacitly conceded that the case has reached an advanced stage, this factor should favor denying Samsung's motion.

This case has clearly reached an advanced stage. The Court has already issued its claim construction order, fact discovery has closed, and opening expert reports have been served. By the time Samsung's motion is decided, responsive expert reports will have been served, expert depositions will have taken place, and expert discovery will have closed. This case has, therefore, reached an advanced stage with all discovery completed. Based upon the advanced stage of this litigation, the PTAB considered exercising its discretion to deny institution. *See e.g.*, Samsung Ex. F at 8 (listing six factors the PTAB considers when evaluating whether to institute "based on *an advanced stage* of a parallel proceeding.") (emphasis added). Of the six factors the PTAB considered in determining whether to exercise its discretion to deny institution based on the advanced stage this litigation, only one weighed in favor of institution—that Samsung had removed any overlap between this litigation and the IPRs by stipulating not to pursue §§ 102 and 103 invalidity in this litigation. *Id*. at 7-5. Only by removing all overlap between the two proceedings was Samsung able to convince the PTAB to institute due to the advanced stage of this litigation. *Id*. at 7-14. With respect to the other factors, the PTAB acknowledged that "significant work has been done in the District Court case" (*Id*. at 12) and "the amount of time between the District Court's trial date and our likely issuance of a final written decision is so long that it is unlikely to result in the final written decision being issued before the trial of the District Court case." *Id*. at 10. Even disinterested third-parties have referred to the case as being "already in advanced stages." *See* Exh. 5 (Law360 - Samsung Gets PTAB To Review 5 Patents At Heart of Oct. Trial) ("The Patent Trial and Appeal Board has agreed to review five Nanoco

Technologies Ltd. patents tied to semiconductor technology, even though an October trial against challenger Samsung *is already in advanced stages*.") (emphasis added).

Despite the case being in advanced stages, Samsung argues that there is still more work to do. However, as discussed above in § IV.A supra, the amount of work left is dwarfed by the amount of work already done. The case has already been fully developed on both sides and is ready for trial. Regardless, Samsung argues, "the diligence Samsung exercised in pursuing the IPR process" should be considered. But despite Nanoco filing its complaint in February 2020, Samsung waited until November to file its IPRs. This was almost two months after receiving Nanoco's infringement contentions. Dkt. 54 at 2. Any pretense that this delay was necessary for Samsung to determine which claims to challenge is belied by: (1) the fact that the '068 patent has only one claim, and (2) the fact that Samsung is challenging claims in the IPRs that are *not even asserted* in this case. *See e.g.*, Exh. 6 (excerpts from 2020-11-09 PAPER 001 Petition for Inter Partes Review of U.S. Patent No. 8,524,365 - IPR2021-00186) at 69 ("additionally, Petitioner is challenging claims in this IPR that PO is not asserting in the District Court case."). Because this case is in advanced stages with claim construction already decided and discovery already complete, a stay is inappropriate. This is particularly true because Samsung has removed any overlap between this case and the IPRs, and the PTAB institution decisions show that Samsung's validity positions in the IPRs are weak.

**IV.    CONCLUSION**

For the foregoing reasons, Nanoco respectfully request that the Court DENY Samsung's Renewed Motion to Stay Pending Inter Partes Review of the Asserted Patents and allow this case to proceed to trial.

Dated: May 31, 2021               Respectfully submitted,

/s/ *Michael Newman*
Michael Newman
Massachusetts BBO No. 667520
MCNewman@mintz.com
James Wodarski
Massachusetts BBO No. 627036
JWodarski@mintz.com
Michael T. Renaud
Massachusetts BBO No. 629783
MTRenaud@mintz.com
Thomas H. Wintner
Massachusetts BBO No. 667329
TWintner@mintz.com
Matthew Galica
Massachusetts BBO No. 696916
MSGalica@mintz.com
MINTZ LEVIN COHN FERRIS
  GLOVSKY AND POPEO PC
One Financial Center
Boston, MA 02111
Tel: (617) 542-6000
Fax: (617) 542-2241
www.mintz.com

T. John Ward, Jr.
Texas State Bar No. 00794818
E-mail: jw@wsfirm.com
Claire Abernathy Henry
Texas State Bar No. 24053063
E-mail: claire@wsfirm.com
WARD, SMITH & HILL, PLLC
PO Box 1231
Longview, Texas 75606-1231
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)

*Counsel for Plaintiff*
*Nanoco Technologies Ltd*

**CERTIFICATE OF SERVICE**

I certify that on May 31, 2021, I caused a true and correct copy of the foregoing to be served via ECF on all counsel of record.

/s/ *Michael Newman*
Michael Newman
