IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NANOCO TECHNOLOGIES LTD.,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., and SAMSUNG ELECTRONICS AMERICA, INC. | Civil Action No. 2:20-cv-00038-JRG<br><br>**JURY TRIAL DEMANDED**<br><br>**FILED UNDER SEAL** |

**SAMSUNG'S MOTION TO EXCLUDE THE EXPERT
OPINIONS OF MR. THOMAS CREDELLE**

**TABLE OF CONTENTS**

I.    Introduction ................................................................................................................... 1

II.   Legal Standard .............................................................................................................. 2

III.  Argument ....................................................................................................................... 2

        A.    Mr. Credelle's "Incremental Value" Opinions Are Unfounded and Should
             Be Excluded ...................................................................................................... 2

             1.    Mr. Credelle Provides No Testable or Reproducible Methodology
                  for His Value Conclusions ............................................................................ 4

             2.    Mr. Credelle Does Not Tie His Value Assessments to Any Facts or
                  Evidence Regarding Consumer Behavior ..................................................... 8

        B.    Mr. Credelle Is Not Qualified to Offer Expert Opinion Regarding the
             Specific Value Consumers Would Attribute to Particular TV Features ............... 10

IV.  Conclusion .................................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anascape, Ltd. v. Microsoft Corp.*,
  No. CIV.A. 9:06-CV-158, 2008 WL 7180758 (E.D. Tex. Apr. 28, 2008) .............................. 9

*Bmc Software, Inc. v. Servicenow, Inc.*,
  No. 2:14-CV-903-JRG, 2016 WL 379620 (E.D. Tex. Feb. 1, 2016) ............................ 1, 7, 8

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ................................................................................................. 2, 6, 10

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ............................................................................................................ 7

*GPNE Corp. v. Apple, Inc.*,
  No. 12-CV-02885-LHK, 2014 WL 1494247 (N.D. Cal. Apr. 16, 2014) .............................. 6

*Hinson v. State Farm Lloyds*,
  No. 4:20-CV-00093-SDJ-CAN, 2021 WL 400549 (E.D. Tex. Jan. 20, 2021),
  *report and recommendation adopted*, 2021 WL 391227 (E.D. Tex. Feb. 4,
  2021) ................................................................................................................................. 11

*Hunt v. McNeil Consumer Healthcare*,
  297 F.R.D. 268 (E.D. La. 2014) ....................................................................................... 10

*Knight v. Kirby Inland Marine Inc.*,
  482 F.3d 347 (5th Cir. 2007) ......................................................................................... 2, 7

*Rudd v. Gen. Motors Corp.*,
  127 F. Supp. 2d 1330 (M.D. Ala. 2001) .......................................................................... 10

*Stragent, LLC v. Intel Corp.*,
  No. 6:11-CV-421, 2014 WL 1389304 (E.D. Tex. Mar. 6, 2014),
  *order clarified*, 2014 WL 12611339 (E.D. Tex. Mar. 12, 2014) ....................................... 7

I. **INTRODUCTION**

Nanoco's flat-panel display expert, Mr. Thomas Credelle, offers opinions in this case concerning the percentage of incremental value that consumers allegedly attribute to the inclusion of quantum dot ("QD") films in the accused products. His opinions are based on an "█████" "███████ analysis that he performed ████████ that he could not explain or recreate during his deposition, and that appears nowhere in his expert report. *See* Ex. 2, Credelle Tr. at 78:8–17, 85:22–86:19, 110:2–8, 111:3–11, 136:19–137:12. Nevertheless, Nanoco's damages expert, Mr. Roy Weinstein, ignores these red flags—which are hallmarks of unreliable and inadmissible expert opinion—and uses Mr. Credelle's unsupported value approximations as the key inputs to arrive at his largest damages number: $412 million. *See* Ex. 1, Weinstein Rpt. ¶ 72, Ex. 13.

The Court should exclude Mr. Credelle's incremental value opinions (and Mr. Weinstein's reliance on them) because they have no methodological basis, are not sufficiently tied to the facts of the case, and amount to nothing more than rank speculation. Mr. Credelle admitted that he did not use any algorithm or mathematical formula that would allow anyone to test or confirm his value percentages. In fact, even Mr. Credelle could not recreate his alleged "methodology" at his deposition. *See* Ex. 2, Credelle Tr. at 102:19–103:5. He instead relied exclusively upon his knowledge and experience in the field of flat-panel displays, without explaining how such knowledge or experience allegedly leads to his ultimate conclusions. And Mr. Credelle does not even have the requisite knowledge or experience to offer opinions regarding consumer perception of incremental value—he is an engineer, not an expert in consumer behavior or marketing.

The law is clear that subjective, *ipse dixit* opinions like the ones Mr. Credelle offers in this case are "not based on reliable principles and methods that can be accurately reproduced, examined, and challenged," rendering them unreliable under *Daubert*. *Bmc Software, Inc. v. Servicenow, Inc.*, No. 2:14-CV-903-JRG, 2016 WL 379620, at *2 (E.D. Tex. Feb. 1, 2016). The

Court should therefore exercise its gatekeeping role and exclude Mr. Credelle's speculative opinions.

## II.   LEGAL STANDARD

Under Fed. R. Evid. 702, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). The court's gatekeeping role is important given that "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Id.* at 595. "The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, [and] the link between the facts and the conclusion …." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007). In short, "the expert's testimony must be reliable at each and every step or else it is inadmissible." *Id.* To assess the reliability of expert testimony, the Court may consider, for example, "whether the theory or technique the expert employs is generally accepted; whether the theory has been subjected to peer review and publication; whether the theory can and has been tested; whether the known or potential rate of error is acceptable; and whether there are standards controlling the technique's operation." *Id.* at 351 (citing *Daubert*, 509 U.S. at 593).

## III.   ARGUMENT

### A.   Mr. Credelle's "Incremental Value" Opinions Are Unfounded and Should Be Excluded

Nanoco has proffered Mr. Credelle as an expert in flat-panel display technology to offer an opinion regarding the percentage of "incremental value" that consumers allegedly attribute to the QD film in the accused TV products.[1] *See* Ex. 2, Credelle Tr. at 142:7-23. Mr. Credelle's report

---

[1] Mr. Credelle did not assess the incremental value of the accused monitors or other display products.

2

compares pairs of Samsung TVs—one an accused TV with a QD film, the other an unaccused TV without a QD film—from 2016, 2017, and 2019. *See* Ex. 3, Credelle Rpt. ¶¶ 48–61. For each pairing, Mr. Credelle relies upon a third-party website (rtings.com) to identify allegedly "significant" differences in performance that he believes are tied to the QD film—*e.g.*, brightness, color gamut, and power efficiency. *Id.* Mr. Credelle never explains what makes a difference "significant." Nevertheless, in a single sentence at the end of each comparison, he concludes—without substantive explanation—that "the majority … of the increased value" for each accused TV is attributable to the use of a QD film, and he provides an approximate "increased value" percentage attributable to the film: 75% for the accused TV from 2016, 80% for the accused TV from 2017, and 90% for the accused TV from 2019.[2] *See id.* ¶¶ 51, 56, 61. Mr. Credelle offers no support or explication of his one-sentence conclusions, nor does he address the analytical gap between the rtings.com data and his value percentages. Moreover, each of his value percentages is preceded by "e.g., ~," indicating that it is, at best, an approximation. *Id.*; *see also* Ex. 2, Credelle Tr. at 88:20–24

And Mr. Credelle admitted that his value percentages are imprecise and subject to an undefined amount of error:

---

[2] Mr. Credelle also does not explain what he means by "value" in his conclusions, only generally stating that it reflects the ▮▮▮▮▮▮▮▮." Ex. 2, Credelle Tr. at 142:7–23. And although Mr. Credelle would not confirm that "value" refers to price (*id.*), Mr. Weinstein applies Mr. Credelle's value percentages to the price difference between accused and unaccused TVs in one of his damages models. *See* Ex. 1, Weinstein Rpt. at Ex. 13.

3



See Ex. 2, Credelle Tr. at 89:14–22, 136:19–137:12 (objections omitted and emphases added). These approximate, imprecise conclusions are unsupported by any testable or reproducible methodology, are subject to an unknown rate of error, are not tied to any facts or evidence regarding consumer behavior, and should therefore be struck.

        1.    **Mr. Credelle Provides No Testable or Reproducible Methodology for His Value Conclusions**

Mr. Credelle has articulated no methodology—let alone a testable, reproducible, peer-reviewed methodology—to connect the alleged "significant differences" between TVs to his ultimate conclusions regarding value attributable to the QD film. He repeatedly admitted that he did not use an algorithm, formula, equation, calculation, or other methodology to arrive at his value approximations, leaving the Court and jury to guess at the nature and magnitude of his errors:





Ex. 2, Credelle Tr. at 80:3–8; 110:2–8; 139:4–9; 140:21–141:4 (objections omitted and emphases added). His value approximations are nothing more than guesswork. Nor could Mr. Credelle explain how he identified and quantified the "significant differences" between TV pairs that are the bases for his value approximations:



*Id.* at 77:17–78:7. And he further could not differentiate between the allegedly "significant," "notable," and "substantial" differences among the TVs, despite using those terms throughout his report to justify his value assessments. *See id.* at 190:1–191:25.

Mr. Credelle thus could not explain his value determinations or even the inputs to those determinations. Instead, he determined value percentages ▇▇▇▇ based solely on his experience and knowledge of flat panel displays, though he could not reproduce those determinations at his deposition:



Ex. 2, Credelle Tr. at 102:19–103:5; 111:3–11 (objection omitted and emphases added).

Without any testable methodology for the Court and jury to evaluate, Mr. Credelle's approach is nothing more than a "black box without sound economic and factual predicates." *GPNE Corp. v. Apple, Inc.*, No. 12-CV-02885-LHK, 2014 WL 1494247, at *5 (N.D. Cal. Apr. 16, 2014); *see also Daubert*, 509 U.S. at 589–90 ("The subject of an expert's testimony must be 'scientific ... knowledge.' The adjective 'scientific' implies a grounding in the methods and procedures of science. Similarly, the word 'knowledge' connotes more than subjective belief or

6

unsupported speculation."). And "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

This Court has repeatedly excluded *ipse dixit* expert opinions like the ones Mr. Credelle offers in this case. In *Bmc Software*, for example, the Court rejected opinions that were entirely based on the expert's subjective evaluation of information in view of his "industry experience," resulting in "nothing more than *ipse dixit* statements." 2016 WL 379620, at *2 (finding that the expert's opinions "while based on his own personal experience, are not based on reliable principles and methods that can be accurately reproduced, examined, and challenged"). Likewise here, Mr. Credelle cannot rely solely on his experience and alleged expertise as the basis for an inarticulable "methodology" that leads to opinions regarding the alleged value of the QD film in the accused products. Without any methodology for the Court and jury to evaluate, Mr. Credelle's opinions are the unreliable product of "guesswork," without "'adequate basis for the opinion' that would provide the requisite indicia of expert reliability." *Stragent, LLC v. Intel Corp.*, No. 6:11-CV-421, 2014 WL 1389304, at *4 (E.D. Tex. Mar. 6, 2014) (quoting *Knight*, 482 F.3d at 355) (excluding an expert's attribution of 2.2% of average selling price to the accused feature based on an assumption that each of 19 features related to reliability, availability, and service (RAS) contributes equally to the 42% of the average selling price assumed to be attributable to RAS), *order clarified*, 2014 WL 12611339 (E.D. Tex. Mar. 12, 2014). Nor is it sufficient that Mr. Credelle considered third-party data for his TV comparisons since he cannot explain how that data supports his value conclusions, which further confirms their inadmissibility. *Knight*, 482 F.3d at 354–55 ("[T]he expert's testimony must be reliable at each and every step or else it is inadmissible. The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts

7

underlying the expert's opinion, ***the link between the facts and the conclusion***, et alia.") (emphasis added).

As in *Bmc Software*, Mr. Credelle's opinions are based on "subjective evaluation" rather than "reliable principles and methods that can be reproduced." 2016 WL 379620, at *2. Mr. Credelle admitted that his value approximations are ***necessarily*** subjective and cannot be explained or repeated, even by him. See Ex. 2, Credelle Tr. at 78:8–17 (" (objection omitted); 85:22–86:19 (explaining that Mr. Credelle could not precisely reproduce the same analysis of "significant differences" that he performed in his mind to arrive at his value approximation opinions because " "); 103:3–4 ( ). Mr. Credelle's opinions are thus as unreliable as the *ipse dixit* statements excluded in *Bmc Software*.

### 2. Mr. Credelle Does Not Tie His Value Assessments to Any Facts or Evidence Regarding Consumer Behavior

Moreover, Mr. Credelle does not tie the allegedly "significant" performance improvements of the accused TVs to his "increased value" percentages that are purportedly related to consumer behavior. He cites no documents or other information to support his assertion that consumers ascribe any particular amount of value to the alleged QD-related features, much less, as he concludes, that consumers allegedly attribute the overwhelming majority of the "increased value" to the QD film. See Ex. 2, Credelle Tr. at 157:14–158:8 (admitting he did not review or rely upon any documents that " or that would otherwise "

8

██████████████████████████████████████████

███████████████████████████████████). In fact, Mr. Credelle was never provided—or even made aware of—documents produced by Samsung in this case that speak to (and refute) his value approximation opinions. *See id.* at 59:16–60:6, 61:10–62:5, 157:14–158:8 (explaining that Mr. Credelle was not aware of and did not ask to review any Samsung consumer data produced in this case, including the Samsung study regarding consumers' feature preferences for televisions); *see also* Ex. 4, SAMSUNG-NTL000135870 (████████████████████ ████████████████████████████████; Ex. 5, SAMSUNG-NTL00156921 (█████ ███████████████████████████████████████████████ ████████). Mr. Credelle never surveyed or spoke to any consumers to assess what performance features in TVs are in fact "significant" to or "valued" by consumers.[3] *See* Ex. 2, Credelle Tr. at 159:6–161:18. He did not even review the consumer survey conducted by Nanoco's own survey expert in this case. *See id.* at 30:25–31:17. And critically, Mr. Credelle never reviewed the asserted patents in connection with forming his opinions (*id.* at 15:11–16:4), never talked to Nanoco's technical experts about the asserted patents (*id.* at 21:25–22:3), never even mentions the asserted patents in his report (*id.* at 16:21–24), and never attempts to tie his value assessments to any of the asserted claims at issue in this case (*id.* at 21:2–9).

As a result, there are no facts for the jury to assess in connection with the claims at issue in this case to determine the reliability or appropriateness of Mr. Credelle's increased value assessments, rendering them improper under *Daubert* and Fed. R. Evid. 702. *See Anascape, Ltd. v. Microsoft Corp.*, No. CIV.A. 9:06-CV-158, 2008 WL 7180758, at *3 (E.D. Tex. Apr. 28, 2008) (excluding expert opinion for lack of factual support because it was based on "mere conjecture":

---

[3] Mr. Credelle's opinions regarding consumer value of particular features are undercut by the results of the survey by another Nanoco expert, Dr. Allenby, which indicate that Samsung TVs containing a QD film do ***not*** command a price premium for TVs larger than 65".

9

"Rule 702 requires that an expert's testimony be based on sufficient facts or data. This requirement is quantitative and imposes a 'floor' on the amount of facts or data an expert must have to support an opinion. There is simply no evidence that Mr. Baldwin relied on sufficient facts or data to base his opinions.") (citing *Rudd v. Gen. Motors Corp.*, 127 F. Supp. 2d 1330, 1339 (M.D. Ala. 2001)).

### B. Mr. Credelle Is Not Qualified to Offer Expert Opinion Regarding the Specific Value Consumers Would Attribute to Particular TV Features

Mr. Credelle is not qualified to offer expert opinion regarding how consumers would value particular features in a Samsung TV, yet that is precisely what he purports to do. *See* Ex. 2, Credelle Tr. at 142:7–144:1. "To qualify as an expert, the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *Hunt v. McNeil Consumer Healthcare*, 297 F.R.D. 268, 276 (E.D. La. 2014); *see also Daubert*, 509 U.S. at 592 (an expert's opinion must "have a reliable basis in the knowledge and experience of his discipline."). Mr. Credelle asserts that his value assessments are meant to reflect how consumers value the differences in his TV pairings. *See* Ex. 2, Credelle Tr. at 142:7–23. And although he says the value assessments are based on his knowledge and experience regarding flat-panel displays, he does not have the requisite knowledge and experience to offer an opinion regarding value from the perspective of a ***consumer***. Mr. Credelle is an electrical engineer—he is not an expert in consumer behavior, nor is he an economist or damages expert. *See id.* 28:10–24; *see also* Ex. 3, Credelle Rpt. ¶¶ 8–18. And Mr. Credelle's only experience in marketing was nearly 30 years ago and did not relate to a commercially released product. Ex. 2, Credelle Tr. at 27:6–28:9.

While Mr. Credelle's experience in flat panel displays may qualify him to opine regarding differences between the pairs of Samsung TVs that he analyzes in his report, his limited experience in marketing and consumer behavior renders him unqualified to offer opinions regarding how

10

consumers attribute value to those differences. Yet that is precisely what he purports to do in this case. *See* Ex. 2, Credelle Tr. at 142:7–23. Mr. Credelle's value assessments that are allegedly intended to reflect consumer preferences and behavior should be excluded as improper opinion testimony from an unqualified witness. *See Hinson v. State Farm Lloyds*, No. 4:20-CV-00093-SDJ-CAN, 2021 WL 400549, at *6 (E.D. Tex. Jan. 20, 2021) ("A court must exclude an expert witness if the witness is not qualified to testify in a particular field or on a given subject."), report and recommendation adopted, 2021 WL 391227 (E.D. Tex. Feb. 4, 2021).

## IV.   CONCLUSION

For all of the foregoing reasons, Samsung respectfully requests that the Court exclude Mr. Credelle's opinions regarding the incremental value attributable to the quantum dot film.

DATED: June 28, 2021                                         Respectfully submitted,

                                                                          */s/ Melissa R. Smith*

Melissa R. Smith
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Gregory S. Arovas, P.C. (*pro hac vice*)
Jeanne M. Heffernan, P.C. (*pro hac vice*)
Stefan M. Miller (*pro hac vice*)
Jon R. Carter (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Edward C. Donovan, P.C. (*pro hac vice*)
F. Christopher Mizzo, P.C. (*pro hac vice*)
Michael A. Pearson, Jr. (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200

*Counsel for Defendants*
*Samsung Electronics Co., Ltd. and*
*Samsung Electronics America, Inc.*

**CERTIFICATE OF CONFERENCE**

On June 28, 2021, counsel for Nanoco and Samsung engaged in a meet and confer conference pursuant to Local Rule CV-7(h). Nanoco's counsel indicated that Nanoco is opposed to the relief sought by this motion.

*/s/ Melissa R. Smith*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 28th day of June, 2021.

*/s/ Melissa R. Smith*

