████████████████████

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| NANOCO TECHNOLOGIES LTD., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., and SAMSUNG ELECTRONICS AMERICA, INC. <br><br><br> Defendants. | Civil Action No. 2:20-cv-00038-JRG <br><br> **JURY TRIAL DEMANDED** <br><br> ██████████████ |

**SAMSUNG'S REPLY BRIEF IN SUPPORT OF ITS MOTION**
**FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**
**OF U.S. PATENT NOS. 7,588,828; 7,803,423; 7,867,557; AND 8,524,365 (DKT. 119)**

████████████████████████████████████████

## TABLE OF CONTENTS

I.   Introduction.................................................................................................. 1

II.  Argument...................................................................................................... 1

    A.   Samsung's Quantum Dots and Their Production Processes Lack MCCs............... 1

        1.   There Is No Evidence that the Alleged ████ Clusters Form............... 2

        2.   The Alleged ████ Clusters Are a Mixture of Different Clusters that Preclude Them from Being the Claimed MCCs................................. 4

        3.   The Only Evidence for Conversion of ████ to ████ Clusters Shows Multiple Dissimilar ████ Clusters Form .................. 6

    B.   Samsung's Quantum Dots Do Not Have a Core "On" a MCC............................. 7

    C.   Samsung's Red Quantum Dots and the Processes for Making Them Do Not Infringe Any Asserted Claim................................................................. 8

    D.   Samsung Is Entitled To Summary Judgment of Non-Infringement of Claims 12, 14, and 21 of the '423 Patent, Claim 6 of the '365 Patent, and All Asserted Claims of the Nanoparticle Patent Under the Doctrine of Equivalents................................................................................................ 10

III. Conclusion ................................................................................................. 10

███████████████████

## TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Data Engine Techs. LLC v. Google LLC,*
   10 F.4th 1375 (Fed. Cir. 2021)…………………………………………...………… 6

*Gen. Elec. Co. v. Joiner,*
   522 U.S. 136 (1997)……………………………………………………...…………….. 3

*In re Segerstrom,*
   247 F.3d 218 (5th Cir. 2001)………………….…………………...………………… 4, 7

*Novartis Corp. v. Ben Venue Labs., Inc.,*
   271 F.3d 1043 (Fed. Cir. 2001)……………………………...…………………………. 4

*Ramot at Tel Aviv Univ. Ltd. v. Cisco Sys., Inc.,*
   No. 2:19-cv-00225-JRG, 2020 WL 2517581 (E.D. Tex. May 15, 2020)…………..……… 5

*Warren v. Mass. Indem. & Life Ins. Co.,*
   15 F.3d 1078, 1994 WL 35596 (5th Cir. Jan. 26, 1994)……………………...………......…… 3

██████████████████████████████████████████████████

## I.    INTRODUCTION

The Court should grant summary judgment of non-infringement as to the nanoparticle patents. Every claim of those patents requires a "molecular cluster compound" ("MCC"), which Nanoco told the Patent Office does ***not*** encompass mixtures of different clusters. Not only is there no evidence from which a reasonable jury could find any MCC exists in Samsung's quantum dots or the processes for making them, but the evidence Nanoco's expert relies on to argue a MCC supposedly exists indisputably shows formation of a mixture of different clusters. In response, Nanoco points to immaterial documents and ignores its clear representations to the Patent Office and public in an effort to argue a dispute remains. But neither creates a triable issue of fact.

Moreover, Nanoco's opposition confirms that its infringement theory with respect to the asserted composition claims contradicts the Court's *Markman* order. And Nanoco's argument that Samsung's red quantum dots and processes for making them infringe the nanoparticle patents suffers from even more significant flaws given that Nanoco's only supposed evidence is documents that on their face have nothing to do with Samsung's red quantum dots.

Last, Nanoco does not contest that Samsung is entitled to summary judgment of non-infringement under the doctrine of equivalents and of certain claims of the '423 and '365 patents.

## II.    ARGUMENT

### A.    Samsung's Quantum Dots and Their Production Processes[1] Lack MCCs

The only alleged MCCs are ███████████████ clusters. Despite Nanoco's attempt to manufacture a material dispute of fact where none exists by pointing to irrelevant documents and testimony, there is no evidence any such cluster exists in the accused processes or in Samsung's quantum dots. Moreover, under Nanoco's only infringement theory, the evidence indisputably

---

[1] ███████████████████████████████████████████    Dkt. 141 at 18 n.1.

shows a mixture of different ▮▮▮ clusters would form, which Nanoco clearly represented to the Patent Office are not MCCs for purposes of patent validity. Because Nanoco is foreclosed by law from contorting its claims to recapture mixtures of different clusters for purposes of alleged infringement, no reasonable jury can find the accused processes or quantum dots comprise a MCC.

### 1.    There Is No Evidence that the Alleged ▮▮▮ Clusters Form

Contrary to Nanoco's arguments, no reasonable jury could find any MCC exists in the Samsung's quantum dots or the processes used to make them. Dkt. 141 at 18-21. Nanoco does not dispute that a MCC ▮▮▮▮▮▮▮▮▮▮▮, that Nanoco and its expert Dr. Cossairt instead allege only that MCCs—specifically, ▮▮▮ clusters having the generic molecular formula ▮▮▮▮—form during the synthesis processes, and that Dr. Cossairt did not ▮▮▮▮▮▮▮▮▮▮. Dkt. 141 at 7(#16-18), 8(#22), 16(#39). Rather, Dr. Cossairt bases her opinion that ▮▮▮ clusters form on nothing more than her say-so, which Samsung explained in its *Daubert* briefs is inadmissible. Dkt. 115; Samsung's Reply Brief re Dkt. 115. None of the supposed evidence Nanoco raises in its opposition creates any material dispute of fact on this issue. *Id.*

The five third-party publications Nanoco cites are inapposite. Nanoco is adamant that the *only* ▮▮▮ cluster that forms (although none actually does) in the accused process is one made from ▮▮▮. Dkt. 141 at 18. Four of the publications are thus irrelevant because they make no mention of ▮▮▮ nor any conditions to make a ▮▮▮ cluster from ▮▮▮.[2] Dkt. 119 at 7-8(#25-29). The fifth publication—the Park Paper, which is the only one that discusses specific

---

[2] Nanoco is wrong that the Zinc Stearate Wikipedia page is relevant at least because it does not disclose *any* conditions for making ▮▮▮ clusters, including from ▮▮▮. Dkt. 141 at 12-13(#28). To the extent Nanoco argues ▮▮▮ itself is a MCC, *id.* at 6(#15), its own expert contradicted that argument by admitting ▮▮▮ has only one ▮▮▮ atom. Dkt. 119-13 ¶ 99 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.").

2

███████████████████████████████████████████████████████████

conditions for making ███████ clusters from ████████—Dr. Cossairt admits is different than the accused processes ██████████████, and Dr. Cossairt offers no explanation resolving this massive analytical gap. Dkt. 119-16 at 98:21-99:8; Dkt. 119-21 at 2796; Dkts. 119-17, -18, -19, -20; *see Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (expert opinions could not reach jury where the "analytical gap between the data and the opinion proffered" was too great).

Nanoco's reliance on Samsung-related documents and deposition testimony are classic red herrings. Dkt. 141 at 9-10, 19-20. ████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████. Dkt. 141 at 13-14(#29) (citing Ex. 29 at 767). And it is irrelevant that a Samsung witness testified ████

████████████████████████████████████████████ because that fact does not make it any more or less probable that the accused processes actually have ████████

███████████████████████.[3] Dkt. 141 at 9(#23); *see Warren v. Mass. Indem. & Life Ins. Co.*, 15 F.3d 1078, 1994 WL 35596, at *1 (5th Cir. Jan. 26, 1994) ("To prevent summary judgment, the plaintiffs must raise more than a hypothetical possibility of a genuine issue of material fact.").

Further, Nanoco is incorrect that Dr. Cossairt has "directly relevant personal experience" as to whether the alleged ████████████ clusters form in the accused processes. Dkt. 141 at 10-11. While Dr. Cossairt testified that she has supposedly read a lot of "textbooks written on the subject ████████████████ that date back many decades," Dkt. 141 at 10-11 (citing Dkt. 141-6 at 83:2-8), she did not cite a single one of those alleged textbooks in her report

---

[3] Nanoco's block quote relating to publications by the same Samsung witness is also irrelevant. Dkt. 141 at 9-10(#23), 19-20. Dr. Cossairt does not cite them as support for ████████ cluster formation, nor could she given the "ligand complexes" and "magic-sized clusters" disclosed in those publications—which Dr. Cossairt does ***not*** opine are MCCs—contain chemical elements (*i.e.*, In and P) that are not present in the only alleged ████████ clusters.

██████████████████████████████████████████████████████

and did not state any of them dealt with ████████ clusters made from ████████. Instead, Nanoco and its expert want the jury to rely on nothing more than her inadmissible say-so. *See In re Segerstrom*, 247 F.3d 218, 227 (5th Cir. 2001) (stating conclusory, unsupported expert opinions "fail to create a genuine issue of material fact" for purposes of summary judgment).

Because there is no genuine issue of material fact that a MCC does not exist, summary judgment of non-infringement should be granted. *See Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1055 (Fed. Cir. 2001) (granting summary judgment of non-infringement).

### 2. The Alleged ████████ Clusters Are a Mixture of Different Clusters that Preclude Them from Being the Claimed MCCs

The only molecular formula Dr. Cossairt identifies in her report for the alleged ████████ clusters—████████—contains a variable "R" that precludes infringement. Dkt. 119-13 ¶ 9. Indeed, Dr. Cossairt testified that, in her view, the accused processes "plausibl[y]" include many different clusters with different "R" groups. Dkt. 119-16 at 74:15-24, 77:2-12. Nanoco thus argues in opposition that a mixture of different ████████ clusters can meet the claimed MCC. Dkt. 141 at 22. But under the Court's construction of that term, every MCC must have the same molecular formula "relative" to one another. Dkt. 84 at 18. And as Samsung explained in its motion for reconsideration, Nanoco further clarified and clearly confirmed during the *inter partes* review ("IPR") proceedings that every MCC in the reaction solution must be identical such that mixtures of different clusters cannot be the claimed MCCs. *See* Dkt. 133; Dkt. 119 at 15-16. As such, no reasonable jury could find the claimed MCC forms in the accused processes nor that one ends up in the finally formed quantum dots. Nanoco's counterarguments lack merit. Dkt. 141 at 21-25.

*First*, Nanoco cannot avoid its representations to the Patent Office as to the scope of MCC term. *Id.* at 3-4(#5), 23-24. Regardless of Nanoco's label for the gold (Au) particles disclosed in the Banin reference at issue in the IPRs, that reference speaks for itself in its disclosure of "small

4

██████████████████████████████████████████████

Au ***clusters***" having the molecular formula "***Au$_{101}$(PPh$_3$)$_{21}$Cl$_5$***." Ex. 30 at 20:12-15 (emphasis added). Nanoco told the Patent Office that "mixtures of clusters are not sufficiently well-defined to meet the definition of a MCC." Ex. 31 at 33. Nanoco now wants to recant its clear and unmistakable statements by distinguishing between so-called "undefined"/"uncharacterized" and "defined"/"characterized" cluster mixtures, but the reality is Nanoco made no such distinction.[4] Dkt. 141 at 23-24. Nanoco said without qualification that a publication showed "***cluster mixtures with masses around 10 kDa***" and that "clusters that have a distribution of masses, like the gold clusters in Banin and the clusters in [the publication], ***are not MCCs under the Court's construction of the term***." Ex. 31 at 34 (emphasis added); *see also Ramot at Tel Aviv Univ. Ltd. v. Cisco Sys., Inc.*, No. 2:19-cv-00225-JRG, 2020 WL 2517581, at *16 (E.D. Tex. May 15, 2020) (explaining the public notice function "requires that a patentee be held to what he declares during the prosecution of his patent" and thus "hold[ing] Plaintiff to [its IPR] representation").

The Board's decisions confirm Nanoco's clear and unmistakable statements as to the scope of the claimed MCC. The Board expressly recognized Nanoco argued "that ***a mixture of clusters is not an MCC*** 'because they wouldn't have the same relative molecular formula,' and would not be identical." Ex. 32 at 21 (emphasis added). Indeed, based on that argument, the Board held that Banin does not disclose the claimed MCC because it supposedly discloses ***too many*** clusters. *See id.* at 27 (concluding Banin does not disclose a MCC because, in the Board's view, Banin only provides "***a disperse mixture of gold clusters that are not identical*** in size and do not have sufficiently well-defined chemical structure such that all molecules of the cluster compound possess the same relative molecular formula, ***as required for MCCs***" (emphasis added)). Given

---

[4] This distinction is further meaningless because ████████████████ ████████████████████████████.

these facts, Nanoco's attempt to rely on the "comprising" nature of the claims and its expert's self-serving testimony to contradict and wash away its clear and unmistakable statements to the Patent Office must be rejected. Dkt. 141 at 22-23, 25. Nanoco cannot now seek to apply a broader meaning of MCC for purposes of infringement than it urged during the IPRs to avoid patent invalidity.[5] *See Data Engine Techs. LLC v. Google LLC*, 10 F.4th 1375, 1381 (Fed. Cir. 2021) (stating claims must be construed the same way for both invalidity and infringement).

*Second*, there is no genuine dispute that under Dr. Cossairt's theory, the accused processes supposedly produce a mixture of different ▆▆▆ clusters having different molecular formulae and masses. Dkt. 119-16 at 52:8-54:23, 74:15-24, 77:2-12. While Nanoco insists Dr. Cossairt opined that a single ▆▆▆ cluster with only one type of "R" (*i.e.*, ▆▆▆) forms, that Dr. Cossairt consistently used "R" (which she admits is a variable) throughout her report rather than the chemical formula associated with ▆▆▆ shows she alleges multiple different ▆▆▆ clusters form. *See* Dkt. 119-13 ¶ 9; Dkt. 119-16 at 50:3-10; 52:14-19. And Dr. Cossairt's testimony that multiple different ▆▆▆ clusters "plausibl[y]" exist is not a response to a mere hypothetical, but rather was confirmation that even under her theory multiple different ▆▆▆ clusters would exist at the relevant step in the accused processes. *See* Ex. 33 at 52:20-55:3, 73:24-74:24, 77:2-12. It is irrelevant that the patent uses "R" as a placeholder with respect to alleged MCCs because those are individual clusters, not mixtures of different clusters existing simultaneously. Dkt. 141 at 21.

### 3. The Only Evidence for Conversion of ▆▆▆ to ▆▆▆ Clusters Shows Multiple Dissimilar ▆▆▆ Clusters Form

Regardless of the "R" groups associated with the alleged ▆▆▆ cluster under Nanoco's theory, the only record evidence shows that multiple different ▆▆▆ clusters form under its

---

[5] That Nanoco also attempted to distinguish Banin on other grounds is irrelevant to the effect of its clear and unmistakable statements that mixtures of different clusters are not MCCs.

███████████████████████████████████████████████████████

theory for a separate reason. Dkt. 119 at 19-20. It is undisputed that the Park Paper—the *only* evidence Dr. Cossairt relies upon to show ████████ can, under the right conditions, ████████ ████████████████████████████████████████████████████████████ ████████████████. Dkt. 119-21 at 2798; Dkt. 119-16 at 95:2-15; Dkt. 141 at 13(#29) (not disputing formation of at least two different ████ clusters). In other words, the Park Paper discloses formation of a cluster mixture that is indistinguishable from the cluster mixture Nanoco said during the IPRs was outside the scope of the claims. *See supra* § II.A.2; Dkt. 141 at 25-27. In fact, the Park Paper used this cluster mixture to synthesize green quantum dots. Dkt. 119-21 at 2796. And Nanoco's reliance on Dr. Cossairt's unsupported testimony suggesting—without a shred of evidence or rationale—that the accused processes somehow necessarily produce only one type of ████ cluster from ████████ without at least the other type of ████ cluster taught by the Park Paper does not create a dispute of fact. *See Segerstrom*, 247 F.3d at 227. Under Nanoco's and its expert's only infringement theory, no reasonable jury could find the alleged ████ clusters formed from ████████ satisfy the MCC requirement of the asserted claims.

**B.    Samsung's Quantum Dots Do Not Have a Core "On" a MCC**

Samsung's quantum dots cannot infringe the asserted composition claims because it is indisputable that those quantum dots do not (indeed, cannot) have a core semiconductor material "provided on" or "disposed on" a "molecular cluster compound" as recited in the claims. Dr. Cossairt rightly admitted at her deposition that it would be "***impossible to grow a semiconductor material on a molecular cluster compound*** with its ligands remaining in place." Dkt. 119-16 at 55:13-20 (emphasis added); Dkt. 141 at 16(#39). Given this impossibility, Dr. Cossairt opines that a core semiconductor material is "on" a MCC so long as it "interacts" with the MCC despite the fact that having lost its "associated ligands," it cannot be a MCC anymore. Dkt. 119-16 at 175:19-176:14; Dkt. 141-6 at 164:9-19; Dkt. 119-15 ¶ 74. That opinion, which

███████████████████████

Nanoco relies on in its opposition, attempts to rewrite the claim from "on said molecular cluster compound" to essentially on a reacted, non-intact form of what allegedly used to be said molecular cluster compound. *See* Dkt. 119 at 21-23; Dkt. 141 at 27-28. This interpretation of "on" cannot be squared with the Court's *Markman* order (which requires "provided on" and "disposed on" be given their plain and ordinary meaning), Dkt. 84 at 9, nor with the express claim language that requires the core semiconductor material to be "on" the claimed "molecular cluster compound" (which the Court construed as having "associated ligands"). *Id.* at 18. Whether the figures in the patents show alleged MCCs losing their ligands during a reaction is irrelevant because those embodiments cannot be imported into the claims to contradict their plain language. *Id.* at 8-9, 18. Nanoco must live with what it actually claimed. *Compare* Dkt. 119-2 at cl. 1 (claiming nanoparticle comprising a core "on" a "molecular cluster compound"), Dkt. 119-5 at cl. 1 (similar), *with* Ex. 34 at 3, 5-6 (during prosecution of another application, and to overcome the Examiner's rejection, Nanoco amended the nanoparticle claim to recite a "***reacted form*** of a molecular cluster compound" within a core (emphasis added)). Because Nanoco's and its expert's only infringement theory with respect to the asserted composition claims cannot show Samsung's quantum dots have a core semiconductor material "on" a MCC—as the claims require under the Court's *Markman* order—the Court should grant summary judgment of non-infringement as to those claims.

### C.    Samsung's Red Quantum Dots and the Processes for Making Them Do Not Infringe Any Asserted Claim

Samsung filed a declaratory judgment of non-infringement for all asserted claims of the nanoparticle patents. Dkt. 21 Countercl. ¶¶ 7-12, 18-23, 29-34, 40-45. And because there is no genuine dispute of material fact, the Court should grant summary judgment that Samsung's red quantum dots and the process by which they are made do not infringe any asserted claim of those patents. To date, even in its opposition, Nanoco has failed to identify *any* specific "molecular

8



cluster compound" related to Samsung's red quantum dots. For that reason alone, Nanoco's infringement theories with respect to Samsung's red quantum dots are waived and must be rejected. Moreover, the only expert evidence bearing on this issue provides that Samsung's red quantum dots do not comprise and are not made in the presence of any molecular cluster compound, and thus do not infringe the asserted nanoparticle patent claims. Dkt. 119-6 ¶¶ 97-99; Dkt. 119-14 ¶ 235. Indeed, Nanoco's own technical expert—Dr. Cossairt—analyzed the recipes used to make Samsung's red quantum dots, and then chose not to offer any opinion regarding those quantum dots. Ex. 45 ¶ 29 & App'x B at 2; Dkt. 119-16 at 41:17-23.

Nonetheless, and without expert support, Nanoco continues to assert that Samsung's red quantum dots infringe the asserted claims of the nanoparticle patents. Dkt. 141 at 28-30. Tellingly, Nanoco does not cite or mention in its brief the actual commercial recipes used to make Samsung's red quantum dots, likely because those recipes plainly establish that there is no triable issue of fact. Exs. 35-38. ███████████████████████████████████████ ████████, Exs. 39-42, ███████████████████████████████ ███████████████████████████. Dkt. 119-14 ¶ 235. And in the remaining Samsung red quantum dot recipes, there is no dispute that ████████████████████████████ █████████████████████████████████████, contrary to the claims. *Id.* These undisputed facts foreclose Nanoco's infringement assertions.

As a last resort, Nanoco points to two documents that have no bearing whatsoever on the red quantum dots used in the accused display products. Dkt. 141 at 5(#10), 28-29. Dr. Jang's 2019 paper is expressly limited on its face to **green** quantum dots, not **red**. *See* Dkt. 141-5 at 1, 2.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████.[6]  *Compare* Dkt. 141-4 at 10, *with*

Dkt. 119-6 ¶¶ 97-99; Dkt. 119-14 ¶ 235; *see also* Exs. 35-38 (commercial process recipes).  In

short, no reasonable jury could find that Samsung's red quantum dots or the process by which they

are made infringe any asserted claim of the nanoparticle patents.

> **D.**     **Samsung Is Entitled To Summary Judgment of Non-Infringement of Claims 12, 14, and 21 of the '423 Patent, Claim 6 of the '365 Patent, and All Asserted Claims of the Nanoparticle Patent Under the Doctrine of Equivalents**

Samsung filed a declaratory judgment of non-infringement for **(1)** claims 12, 14, and 21 of

the '423 patent, Dkt. 21 Countercl. ¶¶ 18-23, **(2)** claim 6 of the '365 patent, *id.* ¶¶ 40-45, and **(3)** all

asserted nanoparticle patent claims under the doctrine of equivalents, *id.* ¶¶ 7-12, 18-23, 29-34,

40-45.  Nanoco does not dispute that it offered either insufficient evidence or no evidence at all of

infringement on these grounds.  Because "Nanoco does not contest" Samsung's motion on these

grounds, Dkt. 141 at 30, the Court should grant Samsung's motion as to these claims and issues.

**III.     CONCLUSION**

For the reasons stated above and in Samsung's opening brief (Dkt. 119), the Court should

grant Samsung's motion for summary judgment of non-infringement of the nanoparticle patents.

---

[6] Further, Nanoco told the Patent Office during prosecution that the process shown in the 2017 presentation that makes a nanoparticle having the same elements as the alleged "cluster" (*i.e.*, using a supposed "cluster" as a "single-source precursor") **is not claimed**.  *See, e.g.*, Ex. 43 at 7. Nanoco had to make this representation to overcome prior art for purposes of patent validity, and cannot attempt to recapture this claim scope now to allege infringement.  Ex. 44 at 1576, 1583-84.

██████████████████████████████████████████

DATED: July 1, 2022                    Respectfully submitted,

                                        */s/ Melissa R. Smith*

                                        Melissa R. Smith
                                        **GILLAM & SMITH, LLP**
                                        303 South Washington Avenue
                                        Marshall, TX 75670
                                        Telephone: (903) 934-8450
                                        Facsimile: (903) 934-9257

                                        Gregory S. Arovas, P.C. (*pro hac vice*)
                                        Stefan M. Miller (*pro hac vice*)
                                        Jon R. Carter (*pro hac vice*)
                                        **KIRKLAND & ELLIS LLP**
                                        601 Lexington Avenue
                                        New York, NY 10022
                                        Telephone: (212) 446-4800
                                        Facsimile: (212) 446-4900

                                        Edward C. Donovan, P.C. (*pro hac vice*)
                                        F. Christopher Mizzo, P.C. (*pro hac vice*)
                                        Michael A. Pearson, Jr. (*pro hac vice*)
                                        Nichole B. DeJulio (*pro hac vice*)
                                        **KIRKLAND & ELLIS LLP**
                                        1301 Pennsylvania Avenue, N.W.
                                        Washington, D.C. 20004
                                        Telephone: (202) 389-5000
                                        Facsimile: (202) 389-5200

                                        Jeanne M. Heffernan, P.C.
                                        Texas State Bar No. 24128395
                                        **KIRKLAND & ELLIS LLP**
                                        401 Congress Avenue
                                        Austin, TX 78701
                                        Telephone: (512) 678-9100
                                        Facsimile: (512) 678-9101

                                        *Counsel for Defendants*
                                        *Samsung Electronics Co., Ltd. and*
                                        *Samsung Electronics America, Inc.*

11

███████████████████████████████████████████████████

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 1st day of July, 2022.

/s/ Melissa R. Smith

