IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| NANOCO TECHNOLOGIES LTD., | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. 2:20-CV-00038-JRG |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., | § § § § | |
| *Defendants*. | § § § | |

## ORDER REGARDING MOTIONS *IN LIMINE*

The Court held a Pretrial Conference in the above-captioned matter on Thursday, August 18, 2022 and Friday, August 19, 2022 regarding pending pretrial motions and motions *in limine* ("MILs") filed by Plaintiff Nanoco Technologies ("Nanoco") and Defendants Samsung Electronics Co. Ltd. and Samsung Electronics America, Inc. (together, "Samsung"). During the Pretrial Conference, the Court heard arguments on Samsung's MIL Nos. 1 and 4 related to non-disclosure agreements ("NDAs") between the parties that were entered into on November 27, 2018 and December 11, 2019, and unconsummated sales of Nanoco's corporate holdings, respectively. The Court carried its decision on Samsung's MILs Nos. 1 and 4 and directed the parties to provide targeted briefing on the NDAs and related issues. (Dkt. No. 258 at 170.) The parties filed their supplemental briefing regarding Samsung's MIL Nos. 1 and 4 concurrently on August 26, 2022.

Having considered the parties' motions, oral argument, briefing, and relevant authorities, and for the reasons discussed herein, the Court rules as follows. The Court **GRANTS-IN-PART** Samsung's MIL No. 1 as to statements made by the parties or any party representative covered by the NDA entered into on November 27, 2018 (the "2018 NDA"), including but not limited to PTX-

065, PTX-625, PTX-626, PTX-627, and PTX-635, and **DENIES** the MIL as to statements made by the parties or any party representative covered by the NDA entered into December 11, 2019 (the "2019 NDA"), including but not limited to PTX-063, except that Nanoco is precluded from using PTX-063 for purposes of supporting an allegation of willful patent infringement or notice of patent infringement against Samsung, per the terms of the 2019 NDA.  The Court **ORDERS** that Nanoco can only use PTX-063 in its damages case with a corporate representative or other fact witness having personal knowledge of it, or a damages expert who has relied upon it, but not with an infringement, invalidity or other technical expert witness.  The Court **GRANTS-IN-PART** Samsung's MIL No. 4 as to unconsummated sales of Nanoco's corporate holdings, including PTX-063, for purposes of supporting willful patent infringement or notice of patent infringement against Samsung, per the terms of the 2019 NDA, but the Court **DENIES** this MIL as to use of the same in Nanoco's damages case, consistent with the Court's ruling on MIL No. 1, above.

I.      **Factual Background**

In fall 2018, Nanoco approached Samsung to pursue potential licensing discussions. Samsung and Nanoco executed an NDA on November 27, 2018, which defined its purpose as "to enter into good faith discussions about patents owned by the Parties and any related intellectual property issues (the 'Purpose')." (Dkt. No. 260-2 (the 2018 NDA) at § 1.) Each party agreed "not to use or disclose any Confidential Information provided by . . . the other Party . . . except to carry out the Purpose." (*Id.* at § 3.)  The 2018 NDA further prohibited either party from using Confidential Information "to establish notice of patent infringement" or "in support of a claim for willful infringement of any patent or enhancement of damages." (*Id.* at § 4.) "Confidential Information" was defined as "any information of a confidential nature provided by either Party . . . including but not limited to, discussions related to the Purpose." (*Id.* at § 2.) The 2018 NDA

stated that the parties' confidentiality obligations would "continue indefinitely." (*Id.* at § 7.) The 2018 NDA included a choice of law clause selecting New York law. (*Id.* at § 8.)

After execution of the 2018 NDA, Samsung and Nanoco exchanged communications and claim charts, which Nanoco alleged show how some of Nanoco's patents apply to Samsung's products. Those communications did not lead to any successful licensing agreements being concluded. Nanoco tried again in fall 2019 to get an answer from Samsung to their licensing proposal, but they were unsuccessful. Samsung told them that they were not interested in Nanoco's patent portfolio due to the adoption of a different technology. (Dkt. No. 261-6 at 1.)

On November 5, 2019, Nanoco formally put itself up for sale. It solicited bids from companies seeking to acquire it, inviting them to enter into NDAs with Nanoco on terms satisfactory to its Board and to formally submit a proposal, announcing a timeline of mid-December 2019 for submitting bids. Samsung was among one of several companies that engaged with Nanoco in this process.

On December 11, 2019, Samsung and Nanoco executed the "2019 NDA" to facilitate further discussions. (Dkt. No. 260-3.) The 2019 NDA defined "Confidential Information" as including "all information regarding the existence, nature or progress of any negotiations regarding the Potential Transaction; and all written and oral correspondence exchanged between the Parties in connection with the Potential Transaction." (*Id.* at §1.1.) The 2019 NDA imposed nondisclosure obligations which the parties dispute. Samsung argues there are obligations are on both parties, citing to Section 3.2, which states that Nanoco shall not "use the fact that the Bidder or any member of its Group has received or accessed any Confidential Information or any evidence demonstrating or showing such fact, for the purposes of supporting an allegation of willful patent infringement or notice of patent infringement against the Bidder." (Dkt. No. 260 at 6.) Nanoco

argues that the 2019 NDA was a "one-way" NDA with the duty of confidentiality imposed solely on Samsung as the bidder, citing the Introduction section: "*the Bidder* has agreed to comply with this Agreement in connection with the use and disclosure of the Confidential Information." (Dkt. No. 261 at 6.)

After execution of the 2019 NDA,[1] on December 13, 2019, Nanoco provided Samsung with a presentation describing its IP portfolio and "Key Patents" that included the '828 Patent asserted in this case. (Dkt. No. 260-4.) On December 20, 2019, Samsung Display Co., Ltd., an affiliate of Samsung Electronics Co., Ltd.,[2] sent Nanoco a "Confidential, Non-Binding Proposal to acquire Nanoco Group plc." (Dkt. No. 260-5 (PTX-063), hereinafter "Acquisition Proposal.") The Acquisition Proposal valued Nanoco's corporate holdings in the range of 53 to 60 million GBP (approx. 70 to 80 million USD at the time) and stated that Samsung was prepared to make an offer subject to Samsung's due diligence and other conditions. Samsung eventually chose not to make a purchase offer. Two other entities also made initial, non-binding offers (Fortress and Seven Hills), and numerous others engaged in discussions with Nanoco without making offers. In the end, no company made a binding offer to purchase Nanoco, and Nanoco ended efforts to sell its business, citing the COVID-19 disruption. (Dkt. No. 260-11 at 16.) The 2019 NDA included a choice of law clause selecting the law of England and Wales. (Dkt. No. 260-3 at § 21.)

---

[1] Nanoco argued at the Pretrial Conference that the 2019 NDA was not executed, because Samsung only showed the signature page with Samsung's signature added. Samsung argues that Nanoco's conduct is consistent with the 2019 NDA having been fully executed.

[2] The Acquisition Proposal states that Samsung Electronics Co., Ltd. was "strongly supportive" of the contemplated transaction. (Dkt. No. 260-5 at 1.) The Acquisition Proposal also states "[w]e are very sensitive to the need to maintain complete confidentiality regarding this Proposal, and agree that we are bound by the terms of a confidentiality agreement executed between Samsung Electronics Co., Ltd. and Target on December 11, 2019." (*Id.* at 5.) Since Samsung does not distinguish between Samsung Display Co., Ltd. and Samsung Electronics. Co., Ltd. for the purposes of the 2019 NDA, neither does the Court.

## II.     Discussion

Samsung argues that its MIL Nos. 1 and 4 should be granted under the plain terms of the 2018 and 2019 NDAs, or under Federal Rules of Evidence 402, 403, and 408. (Dkt. No. 260 at 7–15.) Nanoco argues, first, that Samsung's MIL No. 1 should be denied because the two categories of information in question (patent licensing discussions in the October 2018 to October 2019 timeframe, and separate corporate acquisition discussions in the December 2019 to January 2020 timeframe) are admissible for separate reasons. (Dkt. No. 261 at 1–15.) Second, Nanoco argues that Samsung's MIL No. 4 should be denied because the information in question is highly relevant to damages, outweighing any hypothetical risk of unfair prejudice and juror confusion.

### A. The 2018 NDA and Related Licensing Discussions

The Court first addresses the 2018 NDA. Samsung argues that both NDAs are valid, binding contracts that prohibit Nanoco from using the parties' confidential communications as evidence against Samsung. Samsung contends they are clear on their face, were entered into freely, and should be enforced. (Dkt. No. 260 at 8 (citing *Image Processing Techs., LLC v. Samsung Elecs. Co., Ltd.*, 2020 WL 6832827 (E.D. Tex. June 19, 2020)).) Nanoco does not dispute that the parties' patent licensing discussions in the October 2018 to October 2019 timeframe are subject to the 2018 NDA. (Dkt. No. 261 at 14.) Nanoco asserts, however, that New York courts would be unlikely to find that the confidentiality restrictions of the 2018 NDA are still in force because they impose obligations on the parties "indefinitely." (*Id.* at 10, 14–15 (citing *Denson v. Donald J. Trump for President, Inc.*, 530 F. Supp. 3d 412, 432–34 (S.D.N.Y. 2021) and *Ashland Mgmt. Inc. v. Altair Invs. NA, LLC*, 869 N.Y.S.2d 465, 470 (N.Y. App. Div. 2008)).)

The Court agrees with Samsung that the 2018 NDA is clear and enforceable as to the first category of information as identified by Nanoco (patent licensing discussions in the October 2018 to October 2019 timeframe), and thus, the Court finds that use of the first category of information,

including PTX-065, PTX-625, PTX-626, PTX-627, and PTX-635, is precluded under the 2018 NDA. As Samsung correctly points out, *Denson* and *Ashland* are inapposite. (Dkt. No. 260 at 10.) Those cases turn on considerations unique to companies' attempts to enforce noncompetition agreements against former employees, not specific nondisclosure agreements entered into by sophisticated companies for defined purposes, like patent licensing. Further, Nanoco's assertion that New York law requires "'restrictive covenants, such as confidentiality agreements' must be 'reasonable in time and area' in order to be enforceable," quoting *Denson*, is an incomplete statement of the law. The New York court in *Denson* (quoting *Ashland*) held that "restrictive covenants, such as confidentiality agreements, are subject to specific enforcement to the extent that they are 'reasonable in time and area, necessary ***to protect the employer's legitimate interests, not harmful to the general public and not unreasonably burdensome to the employee***.'" *Denson*, 530 F. Supp. 3d at 432 (cleaning up and adding emphasis). The stated purpose of the 2018 NDA is for Samsung and Nanoco "to enter into good faith discussions about patents owned by the Parties and any related intellectual property issues" (Dkt. No. 260-2 at § 3), which the first category of information relates to, and New York law does not render the 2018 NDA to be an unenforceable noncompete agreement.

### B. The 2018 NDA and Samsung's Acquisition Proposal

The Court next addresses the 2018 NDA and its application to Samsung's Acquisition Proposal. Samsung argues that its unconsummated December 20, 2019 proposal to purchase Nanoco, including PTX-063 and its surrounding negotiations, is covered by the 2018 NDA, which bars its use by Nanoco. According to Samsung, the 2018 NDA prohibits either party from using "Confidential Information," which is defined as "any" confidential information exchanged between the parties relating to the parties' patents and related intellectual property disputes, for any reason except to carry out the Purpose ("to enter into good faith discussions about patents

owned by the Parties and any related intellectual property issues"). (Dkt. No. 260 at 9.) Samsung argues that its proposal to purchase Nanoco included Nanoco's patents, and so the purchasing negotiations are "Confidential Information" under the 2018 NDA. (*Id.*)

Nanoco argues that the 2018 NDA does not apply to the December 2019 discussions about Samsung's potential acquisition of Nanoco because the 2018 NDA's purpose was to facilitate patent licensing discussions, whereas the 2019 NDA was a separate agreement to protect confidential information Nanoco provided to Samsung for its consideration in making an offer to acquire the entire business of Nanoco. (Dkt. No. 261 at 9–10.) These are entirely distinct from one another, as confirmed by the plain text of the agreements, the parties' conduct, and timeline of the acquisition discussions, and the entities involved. (*Id.* at 10–12.)

The Court agrees with Nanoco that the second category of information (corporate acquisition discussions in the December 2019 to January 2020 timeframe), including the acquisition Proposal (PTX-063), is beyond the scope of the 2018 NDA. The stated purpose of the 2018 NDA is for the parties to "enter into good faith discussions about patents owned by the Parties and any related intellectual property issues." The parties' licensing discussions clearly fall into this purpose, but the acquisition of the entirety of Nanoco's business is further afield. The parties acknowledged the need to execute the separate 2019 NDA to facilitate the acquisition negotiation, and labeled their correspondence accordingly.[3] Furthermore, the stated term of the 2018 NDA was to cover "all future *related* discussions between the Parties unless and until such discussions are resolved by mutual consent . . . ." (Dkt. No. 260-2 at § 7 (emphasis added).) Nanoco has shown that after Nanoco provided its claim charts in April 2019 without receiving any response

---

[3] For example, the claim charts and licensing communications between Samsung by Nanoco (via Blank Rome), including PTX-065, PTX-625, PTX-626, PTX627, and PTX-635, were marked as subject to the 2018 NDA, whereas the Acquisition Proposal (PTX-063) referenced only the 2019 NDA.

from Samsung for months (Dkt. No. 261-2), Samsung unambiguously communicated that it considered the matter of licensing discussions closed as of October 2019. (Dkt. No. 261-6.)

The Court finds that the 2018 NDA does not bar Nanoco's use of the second category of information, including acquisition discussions (and PTX-063) which occurred months after the licensing discussions between the parties had already concluded.

### C. The 2019 NDA and Samsung's Acquisition Proposal

Having found that the 2018 NDA does not cover the second category of information, including the Acquisition Proposal (PTX-063), the Court now turns to the issue of whether the 2019 NDA covers the same. The answer is unambiguously yes. However, the more nuanced issue is what restrictions the 2019 NDA places on the use of the second category of information as to each party. The Court addresses the admissibility of the second category of information under the 2019 NDA, and under Federal Rules of Evidence 402, 403, and 408.

Samsung argues that the 2019 NDA prohibits **both** parties from using their discussions "to support[] an allegation of willful patent infringement or notice of patent infringement." (Dkt. No. 260-3 at § 3.2.) Nanoco asserts that the 2019 NDA imposes the duty of confidentiality solely on Samsung. Despite calling the 2019 NDA a "one-way" NDA, Nanoco acknowledges that it too is obliged not to use "the fact that it gave Samsung Confidential Information during the formal sale process to prove willful infringement or notice of patent infringement." (Dkt. No. 261 at 6.)

Given Nanoco's admission, and based on the clear text of the 2019 NDA, the Court finds that Nanoco is precluded from using the second category of information, including the Acquisition Proposal (PTX-063), in support of proving willful infringement or notice of patent infringement.

#### 1. Relevance

Rule 402 of the Federal Rules of Evidence prohibit the admission of irrelevant evidence. Samsung argues that the parties only dispute infringement, validity under § 112, damages, and

8

willfulness in this case. (Dkt. No. 260 at 12.) According to Samsung, the NDAs and communications from 2018-2020 are not relevant to these topics. (*Id.* at 12–14.) On the other hand, Nanoco argues that the parties' corporate acquisition discussions in the December 2019 to January 2020 timeframe are highly relevant to damages, among other things. (Dkt. No. 261 at 9.) Samsung even acknowledges that unconsummated offers have some (albeit "little") relevance to damages. (Dkt. No. 260 at 12.)

The Court is persuaded that the parties' corporate acquisition discussions, including PTX-063, are relevant at least to damages in this case. Samsung's own damages model places at issue the relative technical importance and value of Nanoco's patents versus other patents, such as the Nanosys patents and Samsung's own patents. (Dkt. No. 261 at 13–14 (citing Dkt. No. 261-9 (Martinez Report) at ¶¶ 144, 148, 254).) Samsung's damages expert, Mr. Martinez, opined that Samsung's payments totaling $28 million to license over 200 U.S. and 800 foreign patents from Nanosys, and Samsung's payments totaling $65 million to purchase dozens of U.S. and foreign patents and patent applications from QD Vision were informative data points for considering the hypothetical negotiation between Samsung and Nanoco. (Dkt. No. 261-9 at ¶ 142.) Mr. Martinez's opinion that the parties would have agreed to a lump sum royalty for an amount below $28 million at the hypothetical negotiation is based, in part, on Mr. Martinez's understanding from Dr. Colvin (Samsung's rebuttal technical expert) that "Nanosys' patents provide more technical contribution to the Accused Products than do the five Patents-in-Suit." (*Id.* at ¶¶ 254, 148.) Dr. Colvin, in her report, considered the Nanoco patents to be "of limited value," "narrowly tailored and provide little added technological importance over what was already known in the art . . . ." (Dkt. No. 261-8 at ¶ 922.) Dr. Colvin concluded that she "would estimate that the relative

9

contribution of the Samsung and Nanosys patents are at least equal in importance to, if not substantially more technically important than, the Nanoco patents." (*Id.*)

Nanoco is entitled to submit countervailing evidence and test these assertions. Although the comparison of the value of a license to the Patents-in-Suit to the entire corporate holdings of Nanoco is not an apples-to-apples comparison, the value that Samsung placed on Nanoco's company in the Acquisition Proposal is relevant to the amount Samsung would have been willing to pay to license the Patents-in-Suit (e.g., providing an upper bound). Samsung's praise, in the Acquisition Proposal, for Nanoco's "pioneering work" and "foundational and leading edge technology" is also relevant to rebut the assertions of Nanoco's patents being of "limited value." What credibility to lend to either of these positions, however, is a question of weight for the jury.

### 2. Exclusion of Relevant Evidence

Samsung argues that "[a]ny probative value of communications under the NDAs is far outweighed by its potential to confuse the issues, mislead the jury, and waste time by focusing the jury's attention on confidential negotiations that occurred years after the relevant events, and did not result in any consummated agreements." (Dkt. No. 260 at 14.) Samsung also argues that "[u]nder Rule 403 it would also be unfairly prejudicial to permit Nanoco to violate the NDAs." (*Id.*) However, as discussed above, the Court finds that *Nanoco's* use of the corporate acquisition discussions is not violative of the 2019 NDA, which imposes unequal confidentiality obligations on the parties, so long as that information is not used to show willful infringement or notice of patent infringement. The Court does not the find the probative value of Nanoco's limited use of the Acquisition Proposal to be substantially outweighed by danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

### III.     Conclusion

In summary, the Court **GRANTS-IN-PART** Samsung's MIL No. 1 as to statements made by the parties or any party representative covered by the 2018 NDA, including but not limited to PTX-065, PTX-625, PTX-626, PTX-627, and PTX-635, and **DENIES** the MIL as to those covered by the 2019 NDA, including but not limited to PTX-063, except that Nanoco is precluded from using PTX-063 for purposes of supporting an allegation of willful patent infringement or notice of patent infringement against Samsung, per the terms of the 2019 NDA.  The Court **ORDERS** that Nanoco can only use PTX-063 in its damages case with a corporate representative or other fact witness having personal knowledge of it, or a damages expert who has relied upon it, but not with an infringement, invalidity or other technical expert witness.  The Court **GRANTS-IN-PART** Samsung's MIL No. 4 as to unconsummated sales of Nanoco's corporate holdings, including PTX-063, for purposes of supporting willful patent infringement or notice of patent infringement against Samsung, per the terms of the 2019 NDA, but the Court **DENIES** this MIL as to use of the same in Nanoco's damages case, consistent with the Court's ruling on MIL No. 1, above.

If the parties desire to introduce any evidence or argument or otherwise raise or mention any of the foregoing subjects addressed by the MILs set forth herein and before the jury, they must first approach the bench and obtain leave to do so from the Court.

**So ORDERED and SIGNED this 13th day of October, 2022.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE